# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| STEPHEN D. DIGHTON, <br><br> Plaintiff, <br><br> vs. <br><br> ANDREW M. SAUL, Commissioner of Social Security,[1] <br><br> Defendant. | No. C18-57-LTS <br><br> **MEMORANDUM OPINION AND ORDER ON REPORT AND RECOMMENDATION** |

## I.    INTRODUCTION

This case is before me on a Report and Recommendation (R&R) filed by the Honorable Kelly K.E. Mahoney, Chief United States Magistrate Judge. *See* Doc. No. 17. Judge Mahoney recommends that I reverse the decision by the Commissioner of Social Security (the Commissioner) denying Stephen D. Dighton's applications for disability insurance benefits (DIB) under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 401, et seq., and supplemental security income (SSI) under Title XVI of the Act, 42 U.S.C. §§ 1381, et seq and remand for further proceedings. Neither party has objected to the R&R. The deadline for such objections has expired. The background is set forth in the R&R and is repeated herein only to the extent necessary.

---

[1] Andrew M. Saul was sworn in as Commissioner of Social Security on June 17, 2019. Pursuant to Federal Rule of Civil Procedure 25(d), he has been substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit.

## II. APPLICABLE STANDARDS

### A. *Judicial Review of the Commissioner's Decision*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003). The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence that supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188

(8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

### B. *Review of Report and Recommendation*

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error").

3

As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).

### III. THE R&R

Dighton applied for DIB and SSI on October 2, 2014, alleging disability with an onset date of February 1, 2014, due to depression, anxiety and issues with his back. Doc. No. 17 at 2 (citing AR 10, 66-68, 80). After a hearing, an Administrative Law Judge (ALJ) applied the familiar five-step evaluation and found that Dighton was not disabled as defined in the Act. Dighton argues the ALJ erred in: (1) weighing the opinion of his treating source, Dr. Segal, when determining his residual functional capacity (RFC) and (2) failing to resolve conflicts between the VE's testimony and Dictionary of Occupational Titles (DOT) at Step Five. *Id.* at 1, 4. He also argues the ALJ's appointment violates the Appointments Clause of the United States Constitution. Judge Mahoney addressed each argument separately.

#### A. *Analysis of the Treating Physician Opinion*

Judge Mahoney noted that Dr. Segal treated Dighton from May 2014 to May 2015 and performed his back surgery in July 2014. *Id.* at 5 (citing AR 687-88, 812). Dr. Segal provided a hand-written, treating source statement dated February 2, 2017, which

4

was transcribed to letter form and dated February 3, 2014. *Id.* (citing AR 812-19). Dr. Segal diagnosed Dighton with spondylolisthesis, degenerative disc disease, lumbar disc herniation and postlaminectomy syndrome, based on examinations indicating leg weakness, depressed sensation and reflexes, and positive straight leg raise testing as well as x-rays and MRIs. *Id.* (citing AR 812). Dr. Segal opined that Dighton would need to change positions every twenty minutes and as needed, that he could stand and walk less than two hours and sit around two hours in an eight-hour work day, that he would need to walk for around ten minutes every half hour and that he would need to take unscheduled breaks four to six times per day. *Id.* (citing AR 816). He found that Dighton could occasionally lift less than 10 pounds, rarely lift 10 pounds and never lift more than 20 pounds or more and could occasionally climb stairs, but rarely twist, stoop, bend, crouch, or squat, and never climb ladders. *Id.* (citing AR 817). Dr. Segal opined Dighton's symptoms would interfere with his attention and concentration in performing even simple tasks at least 25 percent of the time, that he was capable of low-stress work with "restrictions/part time," and that "pain would prevent moderate work[, and that Dighton could not] function for an 8-hour day." *Id.* (citing AR 813, 818). He further found that Dighton would miss more than four days of work per month and that his "[d]ifficulty with pain/ambulation, tolerance, [and] fatigue" would cause hardship in "working a regular job on a sustained basis." *Id.*

Judge Mahoney noted the ALJ's acknowledgement that Dr. Segal was a treating physician and outlined the treatment he provided Dighton. *Id.* at 6 (citing AR 20). He gave "only some weight" to his opinion for three reasons. He discounted the opinion to the extent Dr. Segal found Dighton disabled because that was a decision reserved for the Commissioner. *Id.* The ALJ also found the records did not support such extreme limitations of missing work four days each month. *Id.* Judge Mahoney noted the ALJ cited one treatment note from September 2013 for the proposition that Dighton had not been taking pain medication and reflected no symptoms or examination results that would support the limitations contained in Dr. Segal's opinion. *Id.* (citing AR 20, 547). Judge

5

Mahoney stated it did not appear the ALJ considered the entirety of this note, which also showed that Dighton visited the emergency room for pneumonia and back pain after he ran out of pain medication and his next scheduled appointment with the pain clinic was three days away. *Id.* (citing AR 543-44). Further, this treatment note showed that Dighton reported numbness and tingling, had limited range of motion and pain in his lumbar region on examination and was given pain medication. *Id.* (citing AR 545-47). Judge Mahoney reasoned that while an ALJ may give less weight to a medical opinion if the opinion is inconsistent with other evidence in the record, the ALJ cannot discount a treating physician's opinion based on inconsistency with one treatment note. *Id.* (citing *Stormo v. Barnhart*, 377 F.3d 801, 805-06 (8th Cir. 2004) (opinions from treating sources may be "given less weight if they are inconsistent with the record *as a whole*.) (emphasis added)). Judge Mahoney also noted that this treatment note was written *prior to* Dighton's alleged onset disability date of February 1, 2014, his treatment with Dr. Segal and his back surgery in July 2014. *Id.* at 6-7. She noted the ALJ failed to address this fact and reconcile this reliance on the September 2013 treatment note with Dr. Segal's specific notation that while Dighton's back surgery initially helped relieve his symptoms, his pain returned and was worse than prior to surgery and did not respond to treatment. *Id.* at 7 (citing AR 20, 812, 814). She concluded that even if the ALJ's reliance on one treatment note could provide a good reason for discounting Dr. Segal's opinion, it did not do so here.

Although the ALJ discussed a single treatment note, Judge Mahoney pointed out that he stated Dr. Segal's opinion was also not supported by the *records* (plural). *Id.* (citing AR 20). She observed that earlier in his opinion, the ALJ had discussed treatment records dating before and after Dighton's surgery. *Id.* (citing AR 16-18). Treatment notes prior to his surgery indicated he had ongoing pain, decreased range of motion and strength and pain with flexion, extension, rotation and palpation. *Id.* (citing AR 379, 381, 384, 387, 396, 399, 403, 407, 409, 412, 414, 540, 546, 573, 614, 684). His treatment included a TENS unit, pain medication, epidural steroid injections, physical

therapy and chiropractic care, all of which were ineffective. *Id.* (citing AR 380, 382, 399, 401, 403, 407, 409, 411, 414). After surgery, Dighton reported ongoing pain and in November 2014, he was diagnosed with postlaminectory syndrome (failed back syndrome). *Id.* (citing AR 18, 724, 764, 770). Dighton's continued reports of pain were supported by examination findings. *Id.* (citing 722, 733, 741, 746, 763-764, 768, 771, 773, 787-88, 823, 828, 831, 837, 840, 842, 844, 867, 872, 882). Dighton tried physical therapy and injections, but only experienced relief with opioid medications by March 2015. *Id.* at 8 (citing AR 758, 763-64, 771, 773, 842). He had also tried a trial spinal cord stimulator, which helped with his pain, but never had a permanent stimulator placed despite receiving approval for one (apparently due to insurance issues). *Id.* (citing AR 831, 837, 840, 844). After the trial stimulator was removed, he experienced greater pain. *Id.* (citing AR 842). Judge Mahoney noted the ALJ failed to explain how these treatment records were inconsistent with Dr. Segal's opinion. She concluded that based on the ALJ's reasoning, inconsistency with the record was not a good reason to discount Dr. Segal's opinion.

Finally, Judge Mahoney addressed the ALJ's third reason – that Dr. Segal's opinion did not reflect Dighton's current limitations because Dr. Segal last treated Dighton in May 2015. *Id.* (citing AR 20). She noted that Dr. Segal provided opinions about Dighton's functional abilities based on his treatment of Dighton from 2014 to 2015. As noted above, the record shows Dighton continued suffering pain after May 2015. Because Dr. Segal's opinion covered the relevant time period (February 1, 2014, to April 5, 2017), Judge Mahoney found the fact that he issued his opinion in 2017 was not a good reason to give it less weight. *Id.* Aside from disregarding Dr. Segal's opinion that Dighton is disabled, Judge Mahoney concluded the ALJ failed to provide good reasons for the weight he assigned to Dr. Segal's opinion – the only treating-source opinion in the record. Moreover, she noted that Dr. Segal had opined, in part, that Dighton's impairments would cause him to be off-task more than 25 percent of the time and miss more than four days of work per month. *Id.* at 9 (citing AR 818). The vocational expert

7

(VE) testified that even if Dighton were off-task 15 percent of the time or missed an average of two days of work per month, he would not be able to perform competitive work and would therefore be disabled. *Id.* (citing AR 63-64). Thus, Judge Mahoney concluded the ALJ's failure to provide good reasons for discounting Dr. Segal's opinion could have affected the ALJ's ultimate determination in this case. She recommends the case be remanded for the ALJ to reconsider Dr. Segal's opinion and provide good reasons for the weight assigned to that opinion. *Id.*

### B.    *Conflict with the DOT*

In addressing Dighton's second argument, Judge Mahoney noted that an ALJ is obligated to determine whether there is any conflict between a VE's testimony and the DOT. If there is, the ALJ should "elicit a reasonable explanation for the conflict" and resolve it by determining if the explanation provides a basis for relying on the VE testimony rather than the DOT information. *Id.* (citing *Moore v. Colvin*, 769 F.3d 987, 990 (8th Cir. 2014) and SSR 00-04p, 65 Fed. Reg. 75759, 75760 (Dec. 4, 2000)).

Here, the ALJ's RFC including the following limitations related to Dighton's mental impairments:

> simple, routine and repetitive tasks in a work environment free of fast-paced production requirements involving only simple work-related instructions and decisions, and with only occasional judgment and work place changes. The claimant can frequently respond to and have interaction with supervisors, coworkers, and the general public.

AR 15. Judge Mahoney noted the ALJ included these mental limitations in the hypothetical questions to the VE. *Id.* at 10 (citing AR 60-62). The VE testified that a person with these mental limitations and the same physical limitations included in the ALJ's ultimate RFC determination could perform work as a cutter and paster, in administrative support work and as a document preparer (microfilm). *Id.* (citing AR 61). The VE also cited the applicable DOT sections for each position and stated they involved

"sedentary, simple[, and] unskilled [work] at an [specific vocational preparation (SVP)]: 2." *Id.*

Dighton argues the document preparer position conflicts with the VE's testimony because the reasoning level for that position is level three, which exceeds the ALJ's mental RFC determination. *Id.* (citing Doc. No. 13 at 4-6). Judge Mahoney noted that the cases cited by Dighton tended to support his position. *Id.* at 11 (discussing *Zavalin v. Colvin*, 778 F.3d 842, 846-47 (9th Cir. 2015), *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005), *Jennings v. Berryhill*, 3:17-cv-03062-LTS, 2018 WL 4107911, at *3-4 (N.D. Iowa Aug. 29, 2018), *adopting report and recommendation*, 2018 WL 3656306 (Aug. 2, 2018)). The court in *Hackett* found a limitation of "simple and routine work tasks . . . seem[ed] inconsistent with the demands of level-three reasoning" and reversed and remanded for "the ALJ to address the apparent conflict between the claimant's ability to perform more than simple and repetitive tasks and the level-three reasoning required by the jobs identified by the VE. *Hackett*, 395 F.3d at 1176. The *Zavalin* court noted a circuit split on whether a limitation of simple, routine or repetitive work was inconsistent with a job requiring a reasoning level of three. *Zavalin*, 778 F.3d at 846. The court adopted the reasoning in *Hackett*. *Id.* at 12. Similarly, in *Jennings*, the court noted the tension between "simple, routine tasks with simple instructions" and jobs requiring level three reasoning. *Jennings*, 2018 WL 3656306, at *3, *10. It was unable to determine whether the claimant was capable of performing the job of document preparer because the record was insufficient to determine whether the claimant had the requisite reasoning level to perform the job. *Id.* at *12.

Judge Mahoney found that the cases cited by the Commissioner were distinguishable. For instance, in *Welsh v. Colvin*, 765 F.3d 926, 930 (8th Cir. 2014), the court concluded that "[t]he failure to address any potential inconsistency between the RFC's limitation to simple, routine, repetitive work and the DOT's requirement of level three reasoning does not require a remand," where the ALJ (on remand to resolve inconsistencies) had "thoroughly questioned the VE regarding her opinion." *Id.* at 12-

9

13 (quoting *Welsh*, 765 F.3d at 927-28, 930). In that case, the VE explained that "the DOT descriptions are maximum possible job requirements" and that the hypothetical person with claimant's limitations could adequately perform the job duties identified by the VE, despite the DOT stating they required level three reasoning. *Id.* at 13 (quoting *Welsh*, 765 F.3d at 929-30). Judge Mahoney noted that here, any conflict between the DOT and VE's testimony went unexplained. *Id.* She observed that the Eighth Circuit has considered whether work as a cashier (requiring level three reasoning) is inconsistent with an ability to "understand, remember, and follow simple, concrete instructions." *Id.* (quoting *Hillier v. Soc. Sec. Admin*, 486 F.3d 359, 367 (8th Cir. 2007)). The court in *Hillier* recognized the tension that exists between those limitations and the cashier job identified by the ALJ, but reasoned that the ALJ's conclusion was ultimately supported by substantial evidence because the claimant had previously worked as a cashier and had not suffered "any mental deterioration" since then. *Id.* (citing *Hillier*, 486 F.3d at 366-67).

Here, the VE outlined Dighton's past relevant work and skill levels before testifying that based on the ALJ's hypothetical RFC, Dighton could not perform past relevant work, in part because those positions required skilled or semi-skilled work. *Id.* (citing AR 59-61). The three positions relied upon by the ALJ for other work available in significant numbers in the national economy that Dighton could perform were simple, unskilled positions. *Id.* Therefore, Judge Mahoney found the reasoning in *Hillier* does not apply here because the jobs were different than Dighton's prior work and even though his prior jobs required higher skill levels than those identified by the VE, the ALJ found that Dighton's RFC had mental limitations that would preclude his prior work (indicating a deterioration in his mental abilities). *Id.* at 13-14.

Judge Mahoney then discussed other cases that could support the Commissioner's position. *Id.* at 14. She noted that in addition to limiting Dighton to "simple, routine, and repetitive tasks," the ALJ included limitations "involving only simple work-related instructions and decisions, and with only occasional judgment and workplace changes."

*Id.* (citing AR 15, 60). She stated it was not clear whether these limitations were comparable to the inability to perform complex technical work or to perform simple, non-detailed work, which courts have found are not in conflict with jobs requiring level three reasoning. *Id.* (citing *Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007) and *Filbert v. Colvin*, No. 4:14-cv-00209-JAR, 2015 WL 1474873, at *9-11 (E.D. Mo. Mar. 31, 2015)). She noted that the limitations taken together plainly exceeded restrictions of "simple, routine and repetitive tasks" or "simple, repetitive tasks" identified in other cases where courts have concluded such limitations are consistent with level two and level three reasoning. *Id.* at 14-15 (citing *Murphy v. Berryhill*, No. 18-CV61-LRR, 2019 WL 2372896, at *6 (N.D. Iowa Apr. 10, 2019) and *Hamer v. Colvin*, No. 4:14 CV 1371 JMB, 2015 WL 6750820, at *10 (E.D. Mo. Nov. 5, 2015)).

Judge Mahoney explained that based on her review of the relevant cases, this issue appears unsettled and whether an inconsistency exists depends on the facts of each case. *Id.* at 15. Judge Mahoney found an apparent conflict between the ALJ's RFC determination (limiting Dighton to simple, routine and repetitive tasks with only simple work-related instructions and decisions, and with only occasional judgment) and positions involving a level-three reasoning (requiring use of commonsense to carry out instructions in "written, oral, or diagrammatic form," and dealing with "problems involving several concrete variables in or from standardized situations"). *Id.* She reasoned that the ALJ concluded the VE relied on his professional knowledge, training and experience to address restrictions not addressed in the DOT. *Id.* (citing AR 23).

The ALJ also asked the VE whether his testimony was consistent with the DOT and the VE responded that there was no inconsistency but clarified that the areas of being off task or absenteeism are not addressed within the DOT and the VE relied on his experience for his testimony. *Id.* (citing AR 62-63). Judge Mahoney noted this does not address Dighton's ability to perform level three reasoning and she could not conclude from the record that other evidence (such as Dighton's prior experience) established that he can perform the reasoning required for work as a document preparer. *Id.* at 15-16.

She concluded that because the ALJ failed to address the inconsistency during the VE's testimony, the VE's testimony does not provide substantial support for the ALJ's finding that Dighton could perform work as a document preparer, a position requiring level-three reasoning. *Id.* at 16. She recommends I find that the ALJ erred by failing to "elicit a reasonable explanation" from the VE for the inconsistency with the DOT and by failing to "resolve the conflict by determining if" the VE's explanation "provide[d] a basis" for finding Dighton can perform the reasoning level required of the document preparer position. *Id.* (citing *Moore*, 769 F.3d at 990 (quoting in turn SSR 00-4p, 65 Fed. Reg. at 75760)).

Judge Mahoney noted that Dighton made the same argument with regard to the "administrative support work" job under DOT § 209.587-010. *Id.* (citing Doc. No. 13 at 6-7). The DOT entry for that job indicates it is sedentary, simple, unskilled work with an SVP 2. *Id.* (citing AR 61). The ALJ adopted the VE's testimony that the hypothetical person described would be able to perform the requirements of this job. *Id.* (citing AR 23). Dighton points out that the DOT section the VE associated with this job is actually for a position as "addresser" and that there is no position in the DOT labeled "administrative support worker." *Id.* Dighton argues the duties required to be an "administrative support worker" are closer to "more complex job[s]" such as "administrative clerk" under DOT § 219.362-010 or "mail clerk" under DOT § 209.687-026 (both of which require level-three reasoning). He contends that because the ALJ failed to resolve the conflict between the RFC and reasoning level three required for the "administrative clerk" and "mail clerk" positions, the ALJ could not rely on the VE's testimony about the "administrative support worker" position. *Id.*

Judge Mahoney agreed with the Commissioner that because the VE specifically cited the DOT number (referring to the addresser position) and the addresser position is the only position out of the three identified by Dighton (addresser, administrative clerk, mail clerk) that requires sedentary work and an SVP Level 2 (consistent with the RFC), the VE could not have used "administrative support worker" to refer to the

"administrative clerk" or "mail clerk" positions as Dighton argues. While the ALJ could have clarified this at the hearing or addressed it in the written decision, Judge Mahoney noted that any deficiency in the opinion that does not affect the outcome does not require remand. *Id.* at 17 (citing *Lewis v. Colvin*, 973 F. Supp. 2d 985, 1008 (E.D. Mo. 2013)). She concluded it appears that both the VE and ALJ meant to find Dighton could work as an addresser and used the correct DOT number but incorrect job title.

Judge Mahoney also agreed with the Commissioner that because the administrative support worker/addresser position and cutter and paster positions exist in significant numbers in the national economy, any error by the ALJ with regard to the document preparer position was harmless. *Id.* at 17-18 (citing *Clay v. Barnhart*, 417 F.3d 922, 931 (8th Cir. 2005)). She recommends I affirm the ALJ's Step Five determination.

### C. Appointments Clause

Finally, Judge Mahoney addressed Dighton's argument that the ALJ was not properly appointed under *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018). *Id.* at 18-22. She noted that the vast majority of courts to address this issue (including district courts in the Eighth Circuit and this court) have held that a claimant forfeits his or her *Lucia*-based Appointment Clause challenge by failing to raise it to the Social Security Administration and have declined to excuse the forfeiture. *Id.* at 20-22 (citing cases). Relying on the reasoning of these decisions, she recommends I reject Dighton's Appointments Clause challenge.

### IV. DISCUSSION

Because the parties did not object to the R&R, I have reviewed it for clear error. Judge Mahoney applied the appropriate legal standards in considering whether the ALJ provided good reasons supported by substantial evidence for giving Dr. Segal's opinion "only some weight" and whether the VE's testimony provided substantial evidence to support the ALJ's determination at Step Five that other work was available in significant

numbers in the national economy. I also agree with her analysis that Dighton forfeited his Appointments Clause challenge by failing to raise it during the administrative proceedings. Based on my review of the record, I find no error – clear or otherwise – in Judge Mahoney's recommendation. As such, I adopt the R&R in its entirety. This case will be remanded for further proceedings in accordance with that recommendation.

On remand the Commissioner will have the opportunity to select the appropriate ALJ to review these issues and Dighton may raise any Appointments Clause challenge he may have at that time. *See Mann v. Berryhill*, No. 4:18-CV-3022, 2018 WL 6421725, at *8 (D. Neb. Dec. 6, 2018); *Dyslin v. Comm'r of Soc. Sec.*, No. 18-CV-0014-LTS, 2019 WL 2219004 at *14 (N.D. Iowa Feb. 22, 2019); *Anderson v. Comm'r of Soc. Sec.*, No. 18-cv-24-LRR, 2019 WL 1212127, at *5 (N.D. Iowa Feb. 19, 2019).

## V. CONCLUSION

For the reasons set forth herein:

1. I **accept** Judge Mahoney' R&R (Doc. No. 17) without modification. *See* 28 U.S.C. § 636(b)(1).

2. Pursuant to Judge Mahoney's recommendation:

   a. The Commissioner's determination that Dighton was not disabled is **reversed** and this matter is **remanded** to the Commissioner for further proceedings as described by Judge Mahoney.

   b. Judgment shall enter in favor of Dighton and against the Commissioner.

   c. If Dighton wishes to request an award of attorney's fees and costs under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412, an application may be filed up until 30 days after the judgment becomes "not appealable," i.e., 30 days after the 60-day time for appeal has ended. *See Shalala v. Schaefer*, 509 U.S. 292, 296 (1993); 28 U.S.C. §§ 2412(d)(1)(B), (d)(2)(G).

**IT IS SO ORDERED.**

**DATED** this 27th day of September, 2019.

                                                                     Leonard T. Strand, Chief Judge